Andres Diaz (A4309)
Timothy J. Larsen (A10263)
**DIAZ & LARSEN**
757 East South Temple, Suite 201
Salt Lake City, UT 84102
Telephone: (801) 596-1661
Fax: (801) 359-6803
Email: courtmail@adexpresslaw.com
*Attorneys for the Debtor in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In Re: IVESTER'S TREE & LAWN, LLC<br>HC 65 Box 215<br>Duchesne, UT 84021 | Bankruptcy No. 25-21998<br>Chapter 11 (Subchapter V)<br><br>Trustee (Brian M. Rothschild)<br><br>FILED ELECTRONICALLY |
| Debtor in Possession. | Hon. Peggy Hunt |

### DEBTOR'S PLAN OF REORGANIZATION DATED JULY 14, 2025, AS MODIFIED

Ivester's Tree & Lawn, LLC. the above-named DEBTOR IN POSSESSION in this case

proposes the following modified PLAN of reorganization pursuant to 11 U.S.C. §§ 1189 and

1190. Section headings in the PLAN are for convenience only and are not intended to be used in

any manner to interpret, define, change, modify, alter, amend, expand, or restrict the substance of

the PLAN.

## TABLE OF CONTENTS

**ARTICLE I:  DEFINITIONS AND RULES OF INTERPRETATION** .................1

**SECTION A    DEFINED TERMS** ........................................................1
    **1.01    Administrative Expense** ..............................................1
    **1.02    Allowed Claim, Allowed Secured Claim, Allowed Priority Claim
        or Allowed Unsecured Claim**..........................................1
    **1.03    Claims Bar Date** ....................................................1
    **1.04    Claim** ..............................................................1
    **1.05    Class** ..............................................................1
    **1.06    Code** ...............................................................2
    **1.07    Confirmation Date** ..................................................2
    **1.08    Confirmation Order** .................................................2
    **1.09    Court** ..............................................................2
    **1.10    Debtor** .............................................................2
    **1.11    Disputed Claim** .....................................................2
    **1.12    Effective Date** .....................................................2
    **1.13    Executory Contract or Unexpired Lease**...............................2
    **1.14    Final Order** ........................................................2
    **1.15    Interests** ..........................................................2
    **1.16    Lien(s)** ............................................................3
    **1.17    Petition Date** ......................................................3
    **1.18    Plan** ...............................................................3
    **1.19    Reorganized Debtor** .................................................3
    **1.20    Rules**...............................................................3
    **1.21    Secured Claim** ......................................................3
    **1.22    Trustee** ............................................................3
    **1.23    Unsecured Claim** ....................................................3

**SECTION B    RULES OF INTERPRETATION, CONSTRUCTION,
           COMPUTATION OF TIME AND REFERENCES** .......................4
    **1.24    Capitalized Terms** ..................................................4
    **1.25    Computation of Time** ................................................4
    **1.26    References** .........................................................4
    **1.27    Exhibits**............................................................4

**ARTICLE II:  BRIEF HISTORY OF THE BUSINESS OPERATIONS OF THE
           DEBTOR AND LIQUIDATION ANALYSIS**...................................4
    **2.01    Brief History of the DEBTOR'S Business Operations**...................4
    **2.02    Liquidation Analysis** ...............................................5

**ARTICLE III: UNCLASSIFIED CLAIMS AND THEIR TREATMENT** ..............5

**SECTION A.   ADMINISTRATIVE EXPENSES** .....................................................5
    3.01    Administrative Expenses and other fees generally ...........................5
    3.02    Services by Professionals in Connection with or in Aid of
            Consummation of the PLAN. .................................................6

**SECTION B.   §507(a)(8) CLAIMS (PRIORITY TAX CLAIMS)** ..........................7
    3.03    Priority Claims.........................................................................7

**ARTICLE IV:   CLASSIFICATION AND TREATMENT OF CLAIMS AND
            INTERESTS**........................................................................8
    4.01    Impaired Classes......................................................................8

**SECTION A.   DESIGNATION AND TREATMENT OF SECURED CLAIMS**...8
    4.02    CLASS 1 – Blue Bridge Financial Inc. .......................................8
    4.03    CLASS 2 – Marlin Leasing Corporation/PEAC..........................9
    4.04    CLASS 3 – Lease Consultants Corporation ..............................10
    4.05    CLASS 4 – Financial Pacific Leasing, Inc./Umpqua .....................10
    4.06    CLASS 5 – FPL/Umpqua .......................................................11
    4.07    CLASS 6 – U.S. Bank, N.A. dba U.S. Bank Equipment Finance. ...12
    4.08    CLASS 7 – Kubota .................................................................13
    4.09    CLASS 8 – Kubota .................................................................13
    4.10    CLASS 9 – FPL/Allegiant ......................................................14
    4.11    CLASS 10 – Huntington National Bank/Allegiant Equipment
            Finance..............................................................................15
    4.12    CLASS 11 – Amur .................................................................15
    4.13    CLASS 12 – Mountain America Credit Union .............................16
    4.14    CLASS 13 – First Citizen's Bank & Trust Company .....................17
    4.15    CLASS 14 – First Citizens.......................................................17
    4.16    CLASS 15 – First Citizen/Ritchie Bros.......................................18
    4.17    CLASS 16 – AP Equipment Financing.......................................19
    4.18    CLASS 17 – Allegiant .............................................................20
    4.19    CLASS 18 – INTENTIONALLY LEFT BLANK...........................20
    4.20    CLASS 19 – Allegiant .............................................................20

**SECTION B.   DESIGNATION AND TREATMENT OF NONPRIORITY
            UNSECURED CLAIMS AND INTERESTS** ....................................21
    4.21    CLASS 20 – NONPRIORITY UNSECURED CLAIMS.................21
    4.22    CLASS 21 – INTERESTS .......................................................22

**ARTICLE V:   EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ........22
  **5.01**   Assumed LEASES and EXECUTORY CONTRACTS ................22
  **5.02**   Rejected LEASES and EXECUTORY CONTRACTS ...............23
  **5.03**   Catch-all Rejection ...................................................23
  **5.04**   Cure.......................................................................23
  **5.05**   Deadline for CLAIMS Based Upon Rejected Contracts.............23

**ARTICLE VI:  MEANS OF EXECUTION OF PLAN**..................................24

**SECTION A.   OPERATION OF BUSINESS** ........................................24
  **6.01**   Operation by REORGANIZED DEBTOR.............................24
  **6.02**   Projected Income and Expenses ....................................24
  **6.03**   Additional Financing ...............................................24
  **6.04**   General Powers of REORGANIZED DEBTOR......................24
  **6.05**   Management of REORGANIZED DEBTOR...........................24
  **6.06**   Avoidable Transfers ...............................................25

**SECTION B.   PAYMENTS OF SECURED CLAIMS, ADMNISTRATIVE**
  **EXPENSES EXECUTORYCONTRACTS** ...................25
  **6.07**   Payment of SECURED CLAIMS and Assumed EXECUTORY
  CONTRACTS or UNEXPIRED LEASES .......................25
  **6.08**   ADMINISTRATIVE EXPENSES Incurred Before
  CONFIRMATION................................................26

**SECTION C.   PAYMENT OF OTHER CLAIMS** ...................................26
  **6.09**   NONPRIORITY UNSECURED CLAIMS...............................26

**SECTION D.   RESOLUTION OF DISPUTED CLAIMS**.............................26
  **6.10**   Deadline for objections to CLAIMS – Generally................26
  **6.11**   Deadline for objection to CLAIMS – rejected EXECUTORY
  CONTRACTS or UNEXPIRED LEASES .........................26
  **6.12**   Reserves for DISPUTED CLAIMS ....................................26
  **6.13**   Offset ..................................................................27
  **6.14**   Un-negotiated Checks and Unclaimed Funds...................27

**ARTICLE VII:EVENTS OF DEFAULT**................................................28
  **7.01**   All Defaults Cured or Waived; All Notes and Obligations
  Decelerated and Reinstated..........................................28
  **7.02**   PRIORITY CLAIMS ...................................................28
  **7.03**   SECURED CLAIMS ...................................................28
  **7.04**   NONPRIORITY UNSECURED CLAIMS................................29

7.05     Additional Default Remedies ................................................29

**ARTICLE VIII: RESERVATION OF RIGHTS AND DISCHARGE** ....................30
8.01     Reservation of Rights..............................................30
8.02     Discharge ................................................................30
8.03     Discharge Under a Consensual PLAN ........................30
8.04     Discharge Under a Cramdown PLAN ..........................30
8.05     No Admission or Waiver ..........................................31
8.06     Modification of Plan ................................................31
8.07     Post-Petition Agreements Unaffected by PLAN ............31

**ARTICLE IX: RETENTION OF JURISDICTION**................................32
9.01     Retention of Jurisdiction ........................................32
9.02     Final Decree............................................................32
9.03     Reopening Case ......................................................33

**ARTICLE X:     MISCELLANEOUS** ............................................33
10.01    REORGANIZED DEBTOR as Disbursing Agent Under
         Consensual PLAN..................................................33
10.02    TRUSTEE as Disbursing Agent Under Cramdown PLAN ............33
10.03    Notices ..................................................................33
10.04    Payments................................................................34
10.05    Change of Address ..................................................34
10.06    Reports....................................................................34
10.07    Request for Confirmation ........................................34

## EXHIBITS

**EXHIBIT 1     CHAPTER 7 - LIQUIDATION ANALYSIS**

**EXHIBIT 2     ACTUAL AND PROJECTED CASH FLOW 2025-2030**

# ARTICLE I

## DEFINITIONS AND RULES OF INTERPRETATION

### SECTION A. DEFINED TERMS

As used in the PLAN:

1.01    ADMINISTRATIVE EXPENSE means a CLAIM or expense described in § 507(a)(1) and (2) of the CODE.

1.02    ALLOWED CLAIM, ALLOWED SECURED CLAIM, ALLOWED PRIORITY CLAIM or ALLOWED UNSECURED CLAIM mean, respectively, a CLAIM, SECURED CLAIM, PRIORITY CLAIM, or UNSECURED CLAIM against the DEBTOR to the extent that:

   a)    PROOF of such CLAIM was:

      (1)    Filed on or before the CLAIMS BAR DATE;

      (2)    Deemed filed pursuant to § 1111(a) of the CODE; or

      (3)    Filed after the CLAIMS BAR DATE with leave of the COURT after notice and opportunity for hearing; and

   b)    (1)    Which is not a DISPUTED CLAIM; or

      (2)    Which is allowed (and only to the extent allowed) by a FINAL ORDER.

1.03    CLAIMS BAR DATE means June 20, 2025, except for government entities, which bar date is October 8, 2025.

1.04    CLAIM means CLAIM as defined in § 101(5) of the CODE.

1.05    CLASS means a category of CLAIMS or equity interests as provided in Article IV of the PLAN.

1

1.06  CODE means the Bankruptcy CODE, 11 U.S.C. § 101 et seq., as amended.

1.07  CONFIRMATION DATE means the date the CONFIRMATION ORDER is entered and is no longer appealable.

1.08  CONFIRMATION ORDER means the order of the COURT confirming the PLAN pursuant to §§1129 and 1191 of the CODE.

1.09  COURT means the United States Bankruptcy Court for the District of Utah and any court having jurisdiction to hear appeals there from.

1.10  DEBTOR means Ivester's Tree & Lawn, LLC. a limited liability company organized under the laws of the State of Utah.

1.11  DISPUTED CLAIM means a CLAIM asserted against the DEBTOR (a) to which an unresolved objection has been filed, or (b) which is scheduled as DISPUTED, contingent or unliquidated, or that is scheduled in the amount of $0 or unknown and which has not been resolved or allowed by FINAL ORDER, estimation or pursuant to the PLAN.

1.12  EFFECTIVE DATE means 30 days after the CONFIRMATION DATE.

1.13  EXECUTORY CONTRACT or UNEXPIRED LEASE means an executory contract or unexpired lease contemplated by § 365 of the CODE between the DEBTOR and any other person or entity.

1.14  FINAL ORDER means an order of the COURT as to which: (a) any appeal that has been taken has been finally determined or dismissed; or (b) the time for appeal has expired and no appeal has been timely filed.

1.15  INTERESTS mean the interests of the sole member of the DEBTOR, which is Christopher Ivester ("Ivester").

2

Ivester's Tree & Lawn, LLC.
Bankruptcy No. 25-21998

1.16    LIEN(S) means a LIEN on or security interest in property in which the DEBTOR has an interest. Creditors with ALLOWED SECURED CLAIMS shall retain such LIENS until their obligations are satisfied in accordance with the PLAN.

1.17    PETITION DATE means April 11, 2025, the date the DEBTOR filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code and elected to proceed under Subchapter V of Chapter 11.

1.18    PLAN means this PLAN of Reorganization as it may be amended or modified.

1.19    REORGANIZED DEBTOR means DEBTOR on and after the EFFECTIVE DATE.

1.20    RULES mean the Bankruptcy Rules promulgated pursuant to 28 U.S.C. § 2075, as amended.

1.21    SECURED CLAIM means a CLAIM SECURED by a properly perfected LIEN on property in which the DEBTOR has an interest, or which is subject to set-off under § 533 of the CODE, to the extent of the value (determined in accordance with § 506 of the CODE) of the interest of the holder of such CLAIM in the DEBTOR'S interest in such property or to the extent of the amount subject to such set-off, as the case may be.

1.22    TRUSTEE means the duly appointed Subchapter V TRUSTEE in the DEBTOR'S case.

1.23    UNSECURED CLAIM means an UNSECURED nonpriority CLAIM against the DEBTOR including any deficiency CLAIM of the holder of a SECURED CLAIM or CLAIM arising from the rejection of an EXECUTORY CONTRACT.

3

Ivester's Tree & Lawn, LLC.
Bankruptcy No. 25-21998

## SECTION B. RULES OF INTERPRETATION, CONSTRUCTION, COMPUTATION OF TIME AND REFERENCES

1.24   <u>Capitalized terms</u>. Unless otherwise provided, any capitalized term used in the PLAN shall have the meaning set forth in Article I.

1.25   <u>Computation of time</u>. In computing any period of time prescribed or allowed in the PLAN, RULE 9006(a) shall apply.

1.26   <u>References</u>. All references to an "article" or Articles" are to articles in the PLAN. All references to "Sections" or a "Section" are to subdivisions designated by capital letters in the PLAN and include all numbered Paragraphs within such Section. All references to "Paragraphs" or a "Paragraph" are to numbered paragraphs in the PLAN.

1.27   <u>Exhibits</u>. All references to an "Exhibit" refer to Exhibits attached hereto.

## ARTICLE II

## BRIEF HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR AND LIQUIDATION ANALYSIS

2.01   <u>Brief History of the DEBTOR'S Business Operations</u>. The DEBTOR is a Utah limited liability company organized to provide forestry services including harvesting trees and lumber and providing firewood to various customers. The DEBTOR was established in 2012. In September 2024, the DEBTOR'S principal, Christopher Ivester, had a serious motorcycle accident. This accident resulted in the DEBTOR not being able to operate for a significant period of time during which bills continued to accumulate and remained unpaid. After several months, Ivester was able to return to work and the DEBTOR'S operations began to return to normal. Unfortunately, the DEBTOR was unable to generate sufficient income fast enough to satisfy its

4

Ivester's Tree & Lawn, LLC.
Bankruptcy No. 25-21998

creditors' demands. In late March and early April, one of the DEBTOR'S primary creditors,

Kubota Credit Corporation ("Kubota"), instituted efforts to repossess one of the DEBTOR'S

essential pieces of equipment, which would have forced the DEBTOR to cease operations. To

avoid such drastic consequences and to provide the DEBTOR with the opportunity to

substantially satisfy the CLAIMS of its creditors, the DEBTOR was left with no choice but to

seek the protections of the CODE

2.02    Liquidation Analysis. Pursuant to Section 1190(1)(B) of the CODE, attached

hereto as **Exhibit 1** is the DEBTOR'S Liquidation Analysis. As shown by the Liquidation

Analysis, if this case was converted to and liquidated under Chapter 7 of the CODE, creditors

with UNSECURED CLAIMS in CLASS 20 in this case would receive an **0%** return, which is

less than they will receive under the DEBTOR'S proposed PLAN. Indeed, through the

DEBTOR'S proposed PLAN under the provisions of Subchapter V of Chapter 11, the

REORGANIZED DEBTOR will be able to distribute to creditors more than the return under

Chapter 7. While there can be no guarantee, the DEBTOR anticipates that the creditor in CLASS

20 will receive over **13%** of their CLAIMS. In any event, the return to CLASS 20 creditors will

be greater under the PLAN than under a Chapter 7 liquidation.

### ARTICLE III

### UNCLASSIFIED CLAIMS AND THEIR TREATMENT

**SECTION A. ADMINISTRATIVE EXPENSES**

3.01    ADMINISTRATIVE EXPENSES and other fees generally. The holder of an

ADMINISTRATIVE EXPENSE shall, unless the holder of such ADMINISTRATIVE

EXPENSE or fee agrees to a different treatment, receive cash within 12 months of the

5

Ivester's Tree & Lawn, LLC.
Bankruptcy No. 25-21998

EFFECTIVE DATE equal to the amount of such ADMINISTRATIVE EXPENSE except that:

a)    Except as set forth in Paragraph 3.02 below, no professional employed by the DEBTOR after the date of entry of the order for relief shall be paid for services rendered prior to the EFFECTIVE DATE before the entry of an order authorizing payment, after notice and a hearing;

b)    ADMINISTRATIVE EXPENSES incurred prior to the EFFECTIVE DATE which are payable in the ordinary course of business after the EFFECTIVE DATE shall be paid after the EFFECTIVE DATE as they come due;

c)    The holder of a CLAIM or expense that becomes an ADMINISTRTIVE EXPENSE after the EFFECTIVE DATE shall receive cash equal to the amount of such ADMINISTRATIVE EXPENSE as soon as practicable after the CLAIM or expense becomes an ADMINISTRATIVE EXPENSE.

3.02    Services by Professionals in Connection with or in Aid of Consummation of the PLAN. Professionals employed by the DEBTOR whose employment was approved by the COURT at or prior to the EFFECTIVE DATE who perform services or advance costs in connection with or in aid of consummation of the PLAN may render periodic billings to the REORGANIZED DEBTOR, which shall promptly pay the same. Each such payment shall be subject to review and final approval by the COURT as to reasonableness as set forth herein. In its final report or motion for final decree, the REORGANIZED DEBTOR shall detail all amounts paid and reimbursed for professional services rendered and costs advanced under this Paragraph and with respect to which no prior application for allowance thereof has been made. In connection with the motion for final decree the COURT shall determine whether or not such

6

payments shall be approved as reasonable.

## SECTION B. § 507(a)(8) CLAIMS (Priority Tax CLAIMS)

3.03    PRIORITY CLAIMS.  The DEBTOR listed the Utah State Tax Commission (the

"USTC") in its Schedule E, as a "Notice Only" creditor. The USTC filed a PROOF OF CLAIM

(POC 1) in the amount of $4,640.66, a portion of which is listed as a PRIORITY CLAIM in the

amount of $2,479.88. The amounts set forth in the USTC's PROOF OF CLAIM, however, were

estimated.  The DEBTOR disputes the amounts set forth in the USTC's PROOF OF CLAIM.

The DEBTOR believes that it is current on all tax obligations to the USTC and that the USTC's

PROOF OF CLAIM should be zero ($0.00). To the extent that the DEBTOR cannot reach an

agreement with the USTC to file an amended PROOF OF CLAIM or otherwise resolve the

disputed CLAIM, the DEBTOR will object to the CLAIM. If the DEBTOR cannot reach an

agreement with the USTC or is otherwise unsuccessful in its objection to the USTC's PROOF

OF CLAIM, the DEBTOR shall pay the USTC's ALLOWED PRIORITY CLAIM in full with

regular installment payments within five years after the PETITION DATE.

The DEBTOR listed the Department of Treasury - Internal Revenue Service (the "IRS")

in its Schedule E, as a "Notice Only" creditor. The IRS filed a PROOF OF CLAIM (POC 22) in

the amount of $63,782.63, a portion of which is listed as a PRIORITY CLAIM in the amount of

$38,902.77. The amounts set forth in the IRS's PROOF OF CLAIM, however, were estimated.

The DEBTOR disputes the amounts set forth in the IRS's PROOF OF CLAIM. The DEBTOR

believes that it is current on all tax obligations to the IRS and that the IRS's PROOF OF CLAIM

should be zero ($0.00). To the extent that the DEBTOR cannot reach an agreement with the IRS

to file an amended PROOF OF CLAIM or otherwise resolve the disputed CLAIM, the DEBTOR

Ivester's Tree & Lawn, LLC.
Bankruptcy No. 25-21998

will object to the CLAIM. If the DEBTOR cannot reach an agreement with the IRS or is

otherwise unsuccessful in its objection to the IRS's PROOF OF CLAIM, the DEBTOR shall pay

the IRS's ALLOWED PRIORITY CLAIM in full with regular installment payments, together

with interest as required under 11 U.S.C. § 511, within five years after the PETITION DATE.

## ARTICLE IV

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

4.01 Impaired Classes. Under the Bankruptcy Code the DEBTOR is required to specify

any class of CLAIMS or INTERESTS that are impaired under the PLAN. Essentially, unless a

plan leaves unaltered the legal, equitable, and contractual rights to which a CLAIM or

INTEREST entitles the holder of such CLAIM or INTEREST, such CLAIM or INTEREST is

impaired. All classes of CLAIMS and INTERESTS are impaired under the PLAN.

**SECTION A. DESIGNATION AND TREATMENT OF SECURED CLAIMS.**

4.02 CLASS 1—Blue Bridge Financial Inc. CLASS 1 contains the CLAIM of Blue

Bridge Financial, Inc. ("Blue Bridge"), which is secured by a 2005 Timbco 445EXL, which in its

Schedules, the DEBTOR values at $65,000.00, and a 2007 John Deere 748GIII, which the

DEBTOR values at $45,000. Blue Bridge filed its PROOF OF CLAIM (POC 3), in the amount

of $205,432.80, with collateral valued at $175,000.00. As indicated in its Schedules, the

DEBTOR believes that the value of the collateral securing Blue Bridge's CLAIM totals

$110,000.00, to which the parties have agreed. In addition, Blue Bridge and the DEBTOR have

previously reached an agreement that is pending COURT approval in which the DEBTOR

agreed to pay to Blue Bridge adequate protection payments in the amount of $2,200.00 per

Ivester's Tree & Lawn, LLC.
Bankruptcy No. 25-21998

month commencing (retroactively) on May 21, 2025, and continuing thereafter on the 1st day of

each month until a plan is confirmed and the first payment to Blue Bridge is made thereunder, or

this bankruptcy case is dismissed, with partial months prorated. The parties also stipulated that

the monthly adequate protection payments would be applied to the SECURED portion of the

outstanding principal balance owed to Blue Bridge on account of its collateral. The DEBTOR

anticipates that payments under the PLAN will commence in October 2025. If so, the DEBTOR

will pay the balance of Blue Bridge's SECURED CLAIM, which the DEBTOR estimates to be

$99,000.00, together with interest at the rate of 8% per annum for a period of five years with

monthly payments in the amount of approximately $2,007.36, commencing on the EFFECTIVE

DATE. Except as otherwise set forth in the PLAN, Blue Bridge shall retain its lien and other

legal and equitable rights and remedies under its loan documents until its SECURED CLAIM is

satisfied in full. Once its SECURED CLAIM is satisfied in full, Blue Bridge shall release its lien

on its collateral. The UNSECURED portion of Blue Bridge's CLAIM in the amount of

$95,432.80 shall be treated under CLASS 20 and shall paid a prorata portion with the other

UNSECURED CLAIMS in CLASS 20.

    4.03 <u>CLASS 2—Marlin Leasing Corporation/PEAC</u>. CLASS 2 contains the CLAIM of

the Marlin Leasing Corporation/PEAC ("Marlin"), which is secured by a 2006 Caterpillar D5N,

which in its Schedules, the DEBTOR values at $25,000.00, a 2016 Magnum MLT-6SK, which in

its Schedules, the DEBTOR values at $2,500.00, a 2017 Multiquip, which in its Schedules, the

DEBTOR values at $2,500.00, and a CMP Attachment, which in its Schedules, the DEBTOR

values at $5,500.00. Marlin filed its PROOF OF CLAIM (POC 4), in the amount of $70,752.13,

with collateral valued at $49,250.00. The parties have agreed to the value of Marlin's collateral

9

set forth in the DEBTOR'S Schedules in the amount of $35,500.00. Accordingly, the DEBTOR

shall pay the SECURED portion of the Marlin's CLAIM in the amount of $35,500.00, together

with interest at the rate of 5% per annum for a period of five years with monthly payments in the

amount of approximately $669.93, commencing on the EFFECTIVE DATE. Except as otherwise

set forth in the PLAN, Marlin shall retain its lien and other legal and equitable rights and

remedies under its loan documents until its SECURED CLAIM is satisfied in full. Once its

SECURED CLAIM is satisfied in full, Marlin shall release its lien on its collateral. The

UNSECURED portion of Marlin's CLAIM in the amount of $35,252.13 shall be treated under

CLASS 20 and shall paid a prorata portion with the other UNSECURED CLAIMS in CLASS

20.

    4.04 <u>CLASS 3—Lease Consultants Corporation</u>. CLASS 3 contains the CLAIM of Lease

Consultant's Corporation ("LCC) which is secured by a Landa Pressure Washer, which in its

Schedules, the DEBTOR values at $5,000.00. LCC filed its PROOF OF CLAIM (POC 5), in the

amount of $6,776.34, with collateral valued at $6,776.34. Pursuant to an agreement with LCC,

commencing on the EFFECTIVE DATE, the DEBTOR shall make 20 payments to LCC in the

amount of $348.01 in full satisfaction of the DEBTOR'S obligation to LCC. Except as

otherwise set forth in the PLAN, LCC shall retain its lien and other legal and equitable rights and

remedies under its loan documents until its CLAIM is satisfied in full. Once its CLAIM is

satisfied in full, LCC shall release its lien on its collateral.

    4.05 <u>CLASS 4—Financial Pacific Leasing, Inc./Umpqua</u>. CLASS 4 contains the CLAIM

of Financial Pacific Leasing, Inc./Umpqua ("FPL") which is secured by a 2011 Bandit 90XP,

which in its Schedules, the DEBTOR values at the amount of FPL's anticipated CLAIM of

Ivester's Tree & Lawn, LLC.
Bankruptcy No. 25-21998

$3,000.00. FPL filed its PROOF OF CLAIM (POC 6), in the amount of $2,452.34, with collateral valued at $2,452.34. To satisfy this CLAIM owing to FPL, commencing on the EFFECTIVE DATE, the DEBTOR shall make 20 payments to FPL in the amount of $122.62 in full satisfaction of the DEBTOR'S obligation to FPL. Except as otherwise set forth in the PLAN, FPL shall retain its lien and other legal and equitable rights and remedies under its loan documents until its CLAIM is satisfied in full. Once its CLAIM is satisfied in full, FPL shall release its lien on its collateral.

4.06 CLASS 5— FPL/Umpqua. CLASS 5 contains the second CLAIM of FPL, which is secured by a 2021 Bandit 9SG-40, which in its Schedules, the DEBTOR values at $10,000.00. FPL filed its PROOF OF CLAIM (POC 7), in the amount of $12,013.91, with collateral valued at $12,013.91. As indicated in its Schedules, the DEBTOR believes that the value of the collateral securing FPL's second CLAIM is $10,000.00. Unless the parties can reach an agreement as to the value of the collateral, or the Court orders otherwise, the DEBTOR shall pay the secured portion of the FPL's second CLAIM in the amount of $10,000.00, together with interest at the rate of 5% per annum in equal monthly payments in the amount of $188.71, commencing on the EFFECTIVE DATE until satisfied in full. Except as otherwise set forth in the PLAN, FPL shall retain its lien and other legal and equitable rights and remedies under its loan documents until its second SECURED CLAIM is satisfied in full. Once its second SECURED CLAIM is satisfied in full, FPL shall release its lien on its collateral. The UNSECURED portion of FPL's second CLAIM in the amount of $2,013.91 shall be treated under CLASS 20 and shall paid a prorata portion with the other UNSECURED CLAIMS in CLASS 20.

11

Ivester's Tree & Lawn, LLC.
Bankruptcy No. 25-21998

4.07 <u>CLASS 6—U.S. Bank NA dba U.S. Bank Equipment Finance</u>. CLASS 6 contains

the CLAIM of U.S. Bank NA dba U.S. Bank Equipment Finance ("U.S. Bank") which is secured

by a lien on a 2018 Freightliner SD122, which in its Schedules, the DEBTOR valued at

$98,500.00. U.S. Bank has filed a PROOF OF CLAIM (POC 8) indicating that as of the

PETITION DATE, it has a CLAIM in the amount of $187,195.02, with collateral valued at

$80,000.00. The DEBTOR and U.S. Bank have stipulated to a value of $89,000.00 for U.S.

Bank's collateral for purposes of treatment of U.S. Bank's SECURED CLAIM under the PLAN.

In addition, U.S. Bank and the DEBTOR have previously reached a Stipulation that was

approved by the Court after notice and a hearing in which the DEBTOR agreed to pay to U.S.

Bank adequate protection payments in the amount of $1,970.00 per month "commencing on June

22, 2025, and continuing thereafter on the 22nd day of each month until this bankruptcy case is

dismissed, or a plan is confirmed and the first payment to U.S. Bank is made thereunder." The

parties also stipulated that the monthly adequate protection payments would be applied to the

secured portion of the outstanding principal balance owed to U.S. Bank on account of its

collateral. Based upon the value to which U.S. Bank and the DEBTOR have agreed to as set

forth above, the DEBTOR shall pay the SECURED portion of the U.S. Bank's CLAIM in the

amount of $89,000.00 less the amount of the adequate protection payments in the amount of

$1,970.00 each made by the DEBTOR until payments to U.S. Bank commences under the

PLAN. The DEBTOR anticipates that such payments will commence in October 2025. If so, the

DEBTOR will pay the balance of U.S. Bank's SECURED CLAIM which the DEBTOR

estimates to be $81,120.00, with no interest for a period of five years with monthly payments in

the amount of approximately $1,352.00 commencing on the EFFECTIVE DATE. Except as

12

Ivester's Tree & Lawn, LLC.
Bankruptcy No. 25-21998

otherwise set forth in the PLAN, U.S. Bank shall retain its lien and other legal and equitable

rights and remedies under its loan documents until its SECURED CLAIM is satisfied in full.

Once its SECURED CLAIM is satisfied in full, U.S. Bank shall release its lien on its collateral.

The UNSECURED portion of U.S. Bank's CLAIM in the amount of $98,195.02 shall be treated

under CLASS 20 and shall paid a prorata portion with the other UNSECURED CLAIMS in

CLASS 20.

4.08 CLASS 7—Kubota.  CLASS 7 contains the CLAIM of Kubota, which is secured by

a 2024 Kubota U55-5 Excavator, which in its Schedules, the DEBTOR values at $67,000.00.

Kubota filed its PROOF OF CLAIM (POC 10), in the amount of $76,431.06, with collateral

valued at $59,947.13.  The DEBTOR will stipulate to Kubota's valuation for purposes of

treatment of Kubota's SECURED CLAIM under the PLAN. The DEBTOR shall pay the

SECURED portion of the Kubota's CLAIM in the amount of $59,947.13 together with interest at

the contract rate of 1.99% per annum for a period of five years with monthly payments in the

amount of approximately $1,050.48 commencing on the EFFECTIVE DATE. Except as

otherwise set forth in the PLAN, Kubota shall retain its lien and other legal and equitable rights

and remedies under its loan documents until its SECURED CLAIM is satisfied in full. Once its

SECURED CLAIM is satisfied in full, Kubota shall release its lien on its collateral. The

UNSECURED portion of Kubota's CLAIM in the amount of $16,483.93 shall be treated under

CLASS 20 and shall paid a prorata portion with the other UNSECURED CLAIMS in CLASS

20.

4.09 CLASS 8—Kubota.  CLASS 8 contains the second CLAIM of Kubota, which is

secured by a 2024 Kubota KX-080-5 Excavator, which in its Schedules, the DEBTOR values at

Ivester's Tree & Lawn, LLC.
Bankruptcy No. 25-21998

$80,000.00. Kubota filed its PROOF OF CLAIM (POC 11), in the amount of $135,268.76, with

collateral valued at $92,178.58. As indicated in its Schedules, the DEBTOR believes that the

value of the collateral securing Kubota's second CLAIM is $80,000.00. Unless the parties can

reach an agreement as to the value of the collateral, or the Court orders otherwise, the DEBTOR

shall pay the SECURED portion of the Kubota's second CLAIM in the amount of $86,000.00

together with interest at the contract rate of 1.99% per annum in equal monthly payments in the

amount of $1,507.01, commencing on the EFFECTIVE DATE until satisfied in full. Except as

otherwise set forth in the PLAN, Kubota shall retain its lien and other legal and equitable rights

and remedies under its loan documents until its second SECURED CLAIM is satisfied in full.

Once its second SECURED CLAIM is satisfied in full, Kubota shall release its lien on its

collateral. The UNSECURED portion of Kubota's second CLAIM in the amount of $49,268.76

shall be treated under CLASS 20 and shall paid a prorata portion with the other UNSECURED

CLAIMS in CLASS 20.

    4.10 <u>CLASS 9—FPL/Allegiant</u>[1]. CLASS 9 contains the third CLAIM of FPL/Allegiant,

which is secured by a 2021 Dodge Ram 4500, which in its Schedules, the DEBTOR values at

$27,000.00. FPL filed its PROOF OF CLAIM (POC 12)[2], in the amount of $42,255.90, with

collateral valued at $42,255.90. As indicated in its Schedules, the DEBTOR believes that the

value of the collateral securing FPL's third CLAIM is $27,000.00. Unless the parties can reach

an agreement as to the value of the collateral, or the Court orders otherwise, the DEBTOR shall

---

[1] Other than the assignment of this one CLAIM from Allegiant, FPL has no affiliation with Allegiant in this case or otherwise.
[2] On July 7, 2025, this creditor filed a CLAIM (POC 21), which appears to be a duplicate of POC 12. The DEBTOR will treat only one of those two CLAIMS.

Ivester's Tree & Lawn, LLC.
Bankruptcy No. 25-21998

pay the SECURED portion of the FPL's third CLAIM in the amount of $27,000.00 together with

interest at the rate of 5% per annum in equal monthly payments in the amount of $509.52,

commencing on the EFFECTIVE DATE until satisfied in full. Except as otherwise set forth in

the PLAN, FPL shall retain its lien and other legal and equitable rights and remedies under its

loan documents until its third SECURED CLAIM is satisfied in full. Once its third SECURED

CLAIM is satisfied in full, FPL shall release its lien on its collateral. The UNSECURED portion

of FPL's third CLAIM in the amount of $15,255.90 shall be treated under CLASS 20 and shall

paid a prorata portion with the other UNSECURED CLAIMS in CLASS 20.

    4.11 <u>CLASS 10—Huntington National Bank/Allegiant Equipment Finance</u>. CLASS 10

contains the CLAIM of Huntington National Bank/Allegiant Equipment Finance ("HNB"),

which is secured by a 2022 Bobcat L85 with Bucket, which in its Schedules, the DEBTOR

values at $50,000.00.  HNB filed its PROOF OF CLAIM (POC 13), in the amount of

$53,212.94, with collateral valued at $53,212.94.   The DEBTOR and HNB have stipulated to a

value of $53,212.94 for HNB's collateral for purposes of treatment of HNB's SECURED

CLAIM under the PLAN. The DEBTOR shall pay HNB's SECURED CLAIM in the amount of

$53,212.94, together with interest at the rate of 8% per annum in equal monthly payments in the

amount of $1,078.97, commencing on the EFFECTIVE DATE until satisfied in full. Except as

otherwise set forth in the PLAN, HNB shall retain its lien and other legal and equitable rights

and remedies under its loan documents until its SECURED CLAIM is satisfied in full. Once its

SECURED CLAIM is satisfied in full, HNB shall release its lien on its collateral.

    4.12 <u>CLASS 11—Amur</u>. CLASS 11 contains the CLAIM of Amur, which is secured by a

2024 Dyna SC 16 Rapid Split Firewood Processor with attachments, which in its Schedules, the

Ivester's Tree & Lawn, LLC.
Bankruptcy No. 25-21998

DEBTOR values at $70,000.00. Amur filed its PROOF OF CLAIM (POC 14), in the amount of $106,357.60, with collateral valued at $47,300.00. The DEBTOR stipulates to Amur's valuation for purposes of treatment of Amur's SECURED CLAIM under the PLAN. The DEBTOR shall pay the SECURED portion of the Amur's CLAIM in the amount of $47,300.00 together with interest at the rate of 5% per annum in equal monthly payments in the amount of $892.61, commencing on the EFFECTIVE DATE until satisfied in full. Except as otherwise set forth in the PLAN, Amur shall retain its lien and other legal and equitable rights and remedies under its loan documents until its SECURED CLAIM is satisfied in full. Once its SECURED CLAIM is satisfied in full, Amur shall release its lien on its collateral. The UNSECURED portion of Amur's CLAIM in the amount of $59,057.60 shall be treated under CLASS 20 and shall paid a prorata portion with the other UNSECURED CLAIMS in CLASS 20.

4.13 <u>CLASS 12—Mountain America Credit Union</u>. CLASS 12 contains the CLAIM of Mountain America Credit Union ("MACU") which is secured by a 2008 GMC C7500 Medium Duty Truck, which in its Schedules, the DEBTOR values at $15,000.00. MACU filed its PROOF OF CLAIM (POC 15), in the amount of $13,938.38, with collateral valued at $13,938.38. The DEBTOR has stipulated to MACU's valuation for purposes of treatment of MACU's SECURED CLAIM under the PLAN. The DEBTOR shall pay MACU's CLAIM in the amount of $13,938.38 together with interest at the contract rate of 8.5% per annum in 60 equal monthly payments in the amount of $285.97, commencing on the EFFECTIVE DATE until satisfied in full. Except as otherwise set forth in the PLAN, MACU shall retain its lien and other legal and equitable rights and remedies under its loan documents until its CLAIM is satisfied in full. Once its CLAIM is satisfied in full, MACU shall release its lien on its collateral.

16

4.14 CLASS 13—First Citizens Bank & Trust Company. CLASS 13 contains the

CLAIM of First Citizens Bank & Trust Company ("First Citizens"), which is secured by a 1976

Prentice 600B Front loader, which in its Motion for Relief from the Automatic Stay ("MFRAS")

First Citizens values at $2,967.00, a 1991 Hitachi Log Loader, which in its MFRAS, First

Citizens values at $8,882.00 and a 2004 Linkbelt 240 LX with Deharco DM4400 Delimber

which, in its MFRAS, First Citizens values at $14,122.00. First Citizens filed its PROOF OF

CLAIM (POC 16), in the amount of $71,486.77, with collateral valued at $71,486.77. As

indicated in its MFRAS, however, First Citizens believes that the value of the collateral securing

First Citizen's CLAIM totals $25,921.00. The DEBTOR has stipulated to First Citizens'

valuation for purposes of treatment of First Citizen's SECURED CLAIM under the PLAN. The

DEBTOR shall pay the SECURED portion of the First Citizen's CLAIM in the amount of

$25,921.00, together with interest at the rate of 5% per annum for a period of five years with

monthly payments in the amount of approximately $489.16, commencing on the EFFECTIVE

DATE. Except as otherwise set forth in the PLAN, First Citizen's shall retain its lien and other

legal and equitable rights and remedies under its loan documents until its SECURED CLAIM is

satisfied in full. Once its SECURED CLAIM is satisfied in full, First Citizens shall release its

lien on its collateral. The UNSECURED portion of First Citizen's CLAIM in the amount of

$45,565.77 shall be treated under CLASS 20 and shall paid a prorata portion with the other

UNSECURED CLAIMS in CLASS 20.

4.15 CLASS 14—First Citizens. CLASS 14 contains the second CLAIM of First

Citizens, which is secured by a 2023 Dodge Ram 2500 Pickup Truck which, in its MFRAS, First

Citizens values at $59,423.00. First Citizens filed its PROOF OF CLAIM (POC 17), in the

17

amount of $70,347.30, with collateral valued at $70,347.30. As indicated in its MFRAS,

however, First Citizens believes that the value of the collateral securing First Citizen's second

CLAIM is $59,423.00. The DEBTOR has stipulated to First Citizens' valuation for purposes of

treatment of First Citizen's SECURED CLAIM under the PLAN. The DEBTOR shall pay the

SECURED portion of the First Citizen's second CLAIM in the amount of $59,423.00, together

with interest at the rate of 5% per annum for a period of five years with monthly payments in the

amount of approximately $1,121.39, commencing on the EFFECTIVE DATE. Except as

otherwise set forth in the PLAN, First Citizen's shall retain its lien and other legal and equitable

rights and remedies under its loan documents until its second CLAIM is satisfied in full. Once its

second CLAIM is satisfied in full, First Citizens shall release its lien on its collateral. The

UNSECURED portion of First Citizen's second CLAIM in the amount of $10,924.00 shall be

treated under CLASS 20 and shall paid a prorata portion with the other UNSECURED CLAIMS

in CLASS 20.

  4.16 <u>CLASS 15—First Citizens/Ritchie Bros</u>. CLASS 15 contains the CLAIM of First

Citizens/Ritchie Bros., which is secured by a 2012 John Deere 2154D Log Loader which, in its

MFRAS, First Citizens values at $18,975.00. First Citizens filed its PROOF OF CLAIM (POC

18), in the amount of $71,993.99, with collateral valued at $71,993.99. As indicated in its

MFRAS, however, First Citizens believes that the value of the collateral securing First Citizen's

third CLAIM is $18,975.00. The DEBTOR has stipulated to First Citizens' valuation for

purposes of treatment of First Citizen's SECURED CLAIM under the PLAN. The DEBTOR

shall pay the SECURED portion of the First Citizen's third CLAIM in the amount of $18,975.00,

together with interest at the rate of 5% per annum for a period of five years with monthly

Ivester's Tree & Lawn, LLC.
Bankruptcy No. 25-21998

payments in the amount of approximately $358.08, commencing on the EFFECTIVE DATE.

Except as otherwise set forth in the PLAN, First Citizen's shall retain its lien and other legal and

equitable rights and remedies under its loan documents until its third CLAIM is satisfied in full.

Once its third CLAIM is satisfied in full, First Citizens shall release its lien on its collateral. The

UNSECURED portion of First Citizen's CLAIM in the amount of $53,018.99 shall be treated

under CLASS 20 and shall paid a prorata portion with the other UNSECURED CLAIMS in

CLASS 20.

4.17 CLASS_16—AP Equipment Leasing. CLASS 16 contains the CLAIM of AP

Equipment Leasing ("AP"), which is secured by a Super High Production Package/Sawmill, a

Brush Cutter and a Chain Firewood Conveyor.  AP filed three PROOFS OF CLAIM in this case

on August 22, 2025[3], (POCs 23, 24 and 25) in the total amount of $137,814.65, and a value for

the collateral in the amount of $66,605.38. The DEBTOR and AP have stipulated to a value of

$64,605.38[4] for AP's collateral for purposes of treatment of AP's SECURED CLAIM.  The

DEBTOR shall pay the SECURED portion of AP's CLAIM in the amount of $64,605.38,

together with interest at the rate of 5% per annum for a period of five years with monthly

payments in the amount of $1,219.18, commencing on the EFFECTIVE DATE. Except as

otherwise set forth in the PLAN, AP shall retain its lien and other legal and equitable rights and

remedies under its loan documents until its SECURED CLAIM is satisfied in full. Once its

SECURED CLAIM is satisfied in full, AP shall release its lien on its collateral. The

---

[3] Because AP aka Allegiant Partners Incorporated was listed as Allegiant in the DEBTOR'S schedules and was not
listed as "disputed, contingent or unliquidated", the DEBTOR is treating AP's PROOFS OF CLAIM as merely
amendments to the schedules and not as late filed. Thus, AP's CLAIMS are treated as ALLOWED under the PLAN.
[4] The parties agreed to reduce the value of the Brush Cutter from $3,000.00 to $1,000.00 for purposes of treating
AP's SECURED CLAIM under the PLAN.

19

Ivester's Tree & Lawn, LLC.
Bankruptcy No. 25-21998

UNSECURED portion of AP's CLAIM in the amount of $73,209.27 shall be treated under

CLASS 20 and shall paid a prorata portion with the other UNSECURED CLAIMS in CLASS

20.

4.18 CLASS 17—Allegiant. CLASS 17 contains the CLAIM of Allegiant, which is

secured by a 2022 Dodge Ram 5500 which, in its Schedules, the DEBTOR values at $55,000.00.

Allegiant did not file a PROOF OF CLAIM as to this CLAIM. Accordingly, the DEBTOR shall

treat this CLAIM as set forth in its Schedules with a loan balance in the amount of $75,000.00

and a value of the collateral at $55,000.00. The DEBTOR shall pay Allegiant's SECURED

CLAIM in the amount of $55,000.00, together with interest at the rate of 5% per annum for a

period of five years with monthly payments in the amount of approximately $1,037.92,

commencing on the EFFECTIVE DATE. Except as otherwise set forth in the PLAN, Allegiant

shall retain its lien and other legal and equitable rights and remedies under its loan documents

until its SECURED CLAIM is satisfied in full. Once its SECURED CLAIM is satisfied in full,

Allegiant shall release its lien on its collateral. The UNSECURED portion of Allegiant's CLAIM

in the amount of $20,000.00 shall be treated under CLASS 20 and shall paid a prorata portion

with the other UNSECURED CLAIMS in CLASS 20.

4.19 CLASS 18—INTENTIONALLY LEFT BLANK.

4.20 CLASS 19—Allegiant. CLASS 19 contains the second CLAIM of Allegiant, which

is secured by a 2018 Dodge Ram 2500 which, in its Schedules, the DEBTOR values at

$14,000.00. Allegiant did not file a PROOF OF CLAIM as to this CLAIM. Unfortunately, this

vehicle is no longer operable because of catastrophic internal damage to its engine. The

DEBTOR estimates that it will cost approximately $14,000.00 to replace the engine and repair

Ivester's Tree & Lawn, LLC.
Bankruptcy No. 25-21998

the additional damages to the vehicle. The DEBTOR estimates that the "as is" salvage value of the vehicle is approximately $7,500.00. Accordingly, the DEBTOR shall treat Allegiant's second CLAIM as set forth in its Schedules with a loan balance in the amount of $30,000.00 and an "as is" value of the collateral at $7,500.00. The DEBTOR shall pay the SECURED portion of Allegiant's second CLAIM in the amount of $7,500.00, together with interest at the rate of 5% per annum for a period of five years with monthly payments in the amount of approximately $141.53, commencing on the EFFECTIVE DATE. Except as otherwise set forth in the PLAN, Allegiant shall retain its lien and other legal and equitable rights and remedies under its loan documents until the SECURED portion of its second CLAIM is satisfied in full. Once the SECURED portion of its third CLAIM is satisfied in full, Allegiant shall release its lien on its collateral. The UNSECURED portion of Allegiant's second CLAIM in the amount of $22,500.00 shall be treated under CLASS 20 and shall paid a prorata portion with the other UNSECURED CLAIMS in CLASS 20.

## SECTION B. DESIGNATION AND TREATMENT OF NONPRIORITY UNSECURED CLAIMS AND INTEREST.

4.21 CLASS 20—NONPRIORITY UNSECURED CLAIMS. CLASS 20 contains all of the ALLOWED nonpriority UNSECURED CLAIMS including, Carquest Auto Parts ($3,214.26), Comenity ($15,000.00), First Citizens (POC 19-$3,728.35), MACU (POC 20-$14,944.73), Progressive Insurance ($4,207.28), Rinehart Oil ($35,151.46), Uline (POC 2-$2,738.35), Zions Bank (POC 9-$6,784.04) and the unsecured portion (if any) of any

Ivester's Tree & Lawn, LLC.
Bankruptcy No. 25-21998

ALLOWED CLAIMS set forth in Classes 1 through 17 and 19 above.[5] Creditors in CLASS 20

shall receive a prorata portion of variable[6] quarterly payments in the amount of approximately

$5,000.00 each for a period of five years for a total $100,000.00. Such payments under the

PLAN shall commence no later than 90 days after the EFFECTIVE DATE. The payments will

be in full satisfaction of the respective CLAIMS of the creditors in CLASS 20.

4.22 <u>CLASS 21—Interests.</u> Ivester will remain the sole owner of the REORGANIZED

DEBTOR until such time as the DEBTOR'S has completed its payments to creditors in

accordance with the PLAN. It is the DEBTOR's position that the "absolute priority rule" does

not apply in cases under Subchapter V of Chapter 11 of the CODE. Ivester may not receive

distributions, however, on account of his ownership interest, until the CLAIMS in CLASS 20

have been paid as provided in the PLAN. Nothing contained in this provision of the PLAN

restricts Ivester's ability to receive a salary as the manager of the REORGANIZED DEBTOR.

## ARTICLE V

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.01    <u>Assumed LEASES and EXECUTORY CONTRACTS.</u> The DEBTOR has or

shall assume the following LEASES and/or EXECUTORY CONTRACTS:

(a) Crescent Uinta, LLC 10-acre land lease adjacent to the DEBTOR'S yard;

(b) Ninigret Depot, LLC Warehouse facility in Tooele, UT;

---

[5] To the extent that the USTC's disputed CLAIM (POC 1- $2,160.78) and the IRS's disputed CLAIM (POC 22-$24,879.86) are allowed, they will also be included in and paid in accordance with CLASS 20.
[6] The amount of the quarterly payments will vary to provide the DEBTOR with the flexibility needed to account for the variability in income and expenses typical of the forestry industry. The total amount paid, however, will be $100,000.00.

(c) USFS Timbersale Contract No. 016506.[7]

5.02    Rejected LEASES and EXECUTORY CONTRACTS. The DEBTOR has or shall reject the EXECUTORY CONTRACT with SITLA Timbersale Contract No. TA891.

5.03    Catch-all Rejection. All EXECUTORY CONTRACTS and LEASES not assumed under the PLAN are rejected.  Although the DEBTOR is not aware of any other EXECUTORY CONTRACTS or LEASES, this provision is included in the PLAN in the event such EXECUTORY CONTRACTS or LEASES exist.

5.04    Cure. To the extent that there may be a default under any EXECUTORY CONTRACT or UNEXPIRED LEASE assumed under the PLAN and cure is not otherwise provided in the PLAN, any such default shall be cured by the defaulting party under such terms and conditions as may be negotiated between the REORGANIZED DEBTOR and the other party to the EXECUTORY CONTRACT or UNEXPIRED LEASE.  If no cure agreement is reached on or before the EFFECTIVE DATE, then the COURT shall determine the nature of any such default and the manner in which it should be cured upon motion of any party to the EXECUTORY CONTRACT or UNEXPIRED LEASE.

5.05    Deadline for CLAIMS Based Upon Rejected Contracts. All CLAIMS resulting from the rejection of EXECUTORY CONTRACTS or LEASES under the PLAN shall be filed and copies thereof served on the REORGANIZED DEBTOR and its undersigned counsel on or before 30 days after the EFFECTIVE DATE or are forever barred.

---

[7] The DEBTOR previously obtained Court approval and has already assumed this executory contract.

Ivester's Tree & Lawn, LLC.
Bankruptcy No. 25-21998

## ARTICLE VI

## MEANS OF EXECUTION OF PLAN

### SECTION A. OPERATION OF BUSINESS

6.01    Operation by REORGANIZED DEBTOR. The REORGANIZED DEBTOR shall continue to operate the DEBTOR'S business and to make payments according to the PLAN.

6.02    Projected Income and Expense. Pursuant to Section 1190(1)(C) of the CODE, attached hereto as **Exhibit 2** is the Projected Income and Expenses for the REORGANIZED DEBTOR for the period from April 11, 2025, through December 31, 2029. The DEBTOR believes these projections are reasonably accurate and attainable over the life of the PLAN. Parties in interest should consult with their accountant or other financial advisor if they have questions pertaining to these projections.

6.03    Additional financing. The REORGANIZED DEBTOR does not anticipate the need to obtain additional financing as it performs under the PLAN.

6.04    General Powers of REORGANIZED DEBTOR. Except as specifically limited by the PLAN, the REORGANIZED DEBTOR shall have the general powers of a limited liability company under Utah law as they may be limited or modified in the articles of organization and operating agreement of the DEBTOR.

6.05    Management of REORGANIZED DEBTOR. Ivester currently manages the DEBTOR. Ivester will remain the manager of the REORGANIZED DEBTOR. At this time, Ivester receives compensation for service rendered in connection with the management and operation of the REORGANIZED DEBTOR'S business in the average amount of approximately $3,000.00 per month. Such compensation may be increased from time to time over the life of the

24

Ivester's Tree & Lawn, LLC.
Bankruptcy No. 25-21998

PLAN so long as the REORGANIZED DEBTOR is current on all payments under the PLAN.

6.06   Avoidable transfers. Under the CODE certain transfers made within 90 days[8] of
the filing of the bankruptcy petition that may have been made on account of an antecedent debt,
made while the DEBTOR was presumed to be insolvent under section 547(f) of the CODE, that
enable the transferee to receive more than it would have received in a Chapter 7 bankruptcy
liquidation, may be recovered as preferential transfers. There are numerous circumstances that
prevent a transfer from being a preference and a number of defenses available to the transferee
under the CODE. In addition, fraudulent transfers made within one year of the petition date may
be recovered under the CODE. Fraudulent transfers include those made with actual intent to
hinder, delay, or defraud creditors and, if the DEBTOR was insolvent, those made for less than
fair equivalent value. The Statement of Financial Affairs and Monthly Reports show payments
within 90 days to various creditors, all of which the DEBTOR believes to have been made in the
ordinary course of business or have been considered and applied to the SECURED portion of the
creditor's CLAIM. Additional payments are shown to SECURED creditors, employees, and
lessors, all of which appear to be unavoidable under the CODE.

## SECTION B. PAYMENTS OF SECURED CLAIMS, ADMINISTRATIVE EXPENSES AND EXECUTORY CONTRACTS

6.07   Payment of SECURED CLAIMS and Assumed EXECUTORY CONTRACTS or
UNEXPIRED LEASES. Payments required to be made to holders of ALLOWED CLAIMS in
CLASSES 1 through 17 and 19and on account of EXECUTORY CONTRACTS and

---

[8] One year is the applicable period if the transfer is to an insider.

25

UNEXPIRED LEASES assumed under the PLAN shall be made by the REORGANIZED

DEBTOR, directly from future revenue, cash on hand, additional financing or any other sources

available to the REORGANIZED DEBTOR.

6.08    ADMINISTRATIVE EXPENSES Incurred Before CONFIRMATION.  Payments

required to be made on account of ADMINISTRATIVE EXPENSES described in Paragraph

2.01 shall be made directly by the REORGANIZED DEBTOR from future revenue, cash on

hand, additional financing or any other source available to the REORGANIZED DEBTOR.

**SECTION C. PAYMENT OF OTHER CLAIMS**

6.09    NONPRIORITY UNSECURED CLAIMS.  Payment on account of ALLOWED

CLAIMS in CLASS 20 (NONPRIORITY UNSECURED CLAIMS) shall be made by the

REORGANIZED DEBTOR from the REORGANIZED DEBTOR'S future revenues, cash on

hand, additional financing or any other source available to the REORGANIZED DEBTOR.

**SECTION D. RESOLUTION OF DISPUTED CLAIMS**

6.10    Deadline for objections to CLAIMS – Generally.  Except as provided in

Paragraph 6.11, objections to CLAIMS shall be filed within 30 days of the EFFECTIVE DATE.

6.11    Deadline for objection to CLAIMS – rejected EXECUTORY CONTRACTS or

UNEXPIRED LEASES.  Objections to CLAIMS described in Paragraph 5.04 based upon

rejection of EXECUTORY CONTRACTS or UNEXPIRED LEASES under the PLAN shall be

filed within 45 days of the deadline for filing and serving such CLAIMS.

6.12    Reserves for DISPUTED CLAIMS.  The REORGANIZED DEBTOR shall

reserve amounts sufficient to pay dividends on DISPUTED CLAIMS in such amount as it deems

appropriate.  When a DISPUTED CLAIM becomes an ALLOWED CLAIM, the

Ivester's Tree & Lawn, LLC.
Bankruptcy No. 25-21998

REORGANIZED DEBTOR shall make distributions equal to all distributions to which the

holder of said CLAIM would have been entitled had the CLAIM been ALLOWED on the

EFFECTIVE DATE.

 6.13 Offset. All offset and recoupment rights of the DEBTOR shall be retained by the

REORGANIZED DEBTOR and may be offset or recouped against any CLAIM or

ADMINISTRATIVE EXPENSE in the payments to be made pursuant to the PLAN in respect of

such CLAIM or ADMINISTRATIVE EXPENSE. Neither the failure to offset nor the

ALLOWANCE of a CLAIM or ADMINISTRATIVE EXPENSE shall be held to constitute a

waiver or release of any right of setoff or recoupment. The right of the REORGANIZED

DEBTOR to seek recovery of overpayments, unauthorized payments or of improper payments of

any kind shall be preserved.

 6.14 Un-negotiated Checks and Unclaimed Funds. Checks issued by the

REORGANIZED DEBTOR to persons holding ALLOWED CLAIMS and not presented for

payment within 90 days following the mailing thereof to the last known address of such person

shall be deemed non-negotiable thereafter and the funds represented thereby shall be held by the

REORGANIZED DEBTOR for a period of 90 days, during which period the holder of the

ALLOWED CLAIM entitled to said funds may claim the same. If the party entitled thereto does

not claim the funds within said period, the funds shall revert to the REORGANIZED DEBTOR

and the holder of the ALLOWED CLAIM shall have no further claims to said funds. The

REORGANIZED DEBTOR shall not make further payments to the holder of an ALLOWED

CLAIM whose prior payment has reverted to the REORGANIZED DEBTOR under this

Paragraph.

Ivester's Tree & Lawn, LLC.
Bankruptcy No. 25-21998

## ARTICLE VII

## EVENTS OF DEFAULT

7.01    <u>All Defaults Cured and Waived; All Notes and Obligations Decelerated and</u>

<u>Reinstated.</u>  Pursuant to Sections 1123(a)(5)(G) and 1124(2) of the CODE, among others, and

except as provided by the PLAN, all defaults that existed or that may have existed under any

promissory note, loan document, unexpired lease, executory contract or other written agreement

of or by the DEBTOR shall be deemed cured and waived as of the EFFECTIVE DATE.  All

notes, instruments or obligations for which payment obligations were accelerated pre-petition

and/or pre-confirmation (if any) shall be decelerated as of the EFFECTIVE DATE and treated as

set forth in the PLAN.  All judicial and non-judicial foreclosure actions and proceedings that

were instituted prepetition and/or pre-confirmation (if any) shall be canceled, terminated and/or

deemed withdrawn and rescinded as of the EFFECTIVE DATE.

7.02    <u>PRIORITY CLAIMS.</u> If the REORGANIZED DEBTOR fails to make a payment

on account of an ALLOWED PRIORITY CLAIM, the holder of such CLAIM shall be entitled to

bring an action against the REORGANIZED DEBTOR in a court of competent jurisdiction,

provided that at least 30 calendar days' notice of intent to bring such action is first given to the

REORGANIZED DEBTOR and its undersigned counsel, and further provided that such action

may not be commenced if the default has been cured before the expiration of the 30 day period.

If such an action is commenced, after default and notice, the holder of the ALLOWED

PRIORITY CLAIM shall be entitled to recover all amounts due and to become due to it under

the PLAN.

7.03    <u>SECURED CLAIMS.</u>  Except as otherwise provided in the PLAN, failure by the

28

Ivester's Tree & Lawn, LLC.
Bankruptcy No. 25-21998

REORGANIZED DEBTOR to make payments to holders of ALLOWED SECURED CLAIMS

shall entitle the holder of any such CLAIM adversely affected thereby to proceed in accordance

with the underlying agreement or agreements between the Claimant and the DEBTOR, as

modified by the PLAN, provided that at least 30 calendar days' notice of intent to pursue such

action is first given to the REORGANIZED DEBTOR and its undersigned counsel, and further

provided that such action may not be commenced if the default has been cured before the

expiration of the 30 calendar day period, and in the absence of an order prohibiting the holder of

the ALLOWED SECURED CLAIM from proceeding with its contractual or statutory rights and

remedies.

    7.04    NONPRIORITY UNSECURED CLAIMS. If the REORGANIZED DEBTOR

fails to make a payment on account of an ALLOWED CLAIM in CLASS 20, the holder of such

CLAIM shall be entitled to bring an action against the REORGANIZED DEBTOR in a court of

competent jurisdiction,  provided that at least 30 calendar days' notice of intent to bring such

action is first given to the REORGANIZED DEBTOR and its undersigned counsel, and further

provided that such action may not be commenced if the default has been cured before the

expiration of the 30 day period.  If such an action is commenced, after default and notice, the

holder of the ALLOWED CLAIM shall be entitled to recover all amounts due and to become due

to it under the PLAN.

    7.05    Additional Default Remedies.  In addition, or in the alternative to the other

remedies for default previously set forth in the section, a creditor or party in interest may bring a

motion to convert or dismiss the case under § 1112(b), after the PLAN is confirmed, if there is a

default in performing the PLAN.  If the Court orders the case converted to Chapter 7 after the

Ivester's Tree & Lawn, LLC.
Bankruptcy No. 25-21998

PLAN is confirmed, then all property that had been property of the Chapter 11 estate, and that

has not been disbursed pursuant to the PLAN, will revest in the Chapter 7 estate, and the

automatic stay will be reimposed upon the revested property only to the extent that relief from

stay was not previously granted by the COURT during this case.

## ARTICLE VIII

## RESERVATION OF RIGHTS AND DISCHARGE

8.01    Reservation of Rights.  Inclusion of a CLAIM herein does not constitute an

admission that the same is owed or is not subject to offset, counterclaim, affirmative defense or

other legal or equitable defense, or that a CLAIM designated as "SECURED" is properly

perfected and the DEBTOR and REORGANIZED DEBTOR reserve the right to object to

CLAIMS and bring appropriate proceedings to determine the validity of LIENS.

8.02    Discharge.  Confirmation of this PLAN does not discharge any debt provided for

in this PLAN until the COURT grants a Discharge.

8.03    Discharge Under a Consensual PLAN.   This PLAN may be confirmed if it meets

all provisions of 11 U.S.C. §1129(a) except for 11 U.S.C. §1129(a)(15) wherein the PLAN is

accepted by every class of claims and interests under the PLAN.  In that event, the COURT will

grant a Discharge upon confirmation which will discharge the DEBTOR from pre-confirmation

debts pursuant to § 1141(d) of the CODE. In addition, the DEBTOR and REORGANIZED

DEBTOR shall receive a Discharge under § 1192 of the CODE on the EFFECTIVE DATE or

whenever the PLAN has been substantially consummated.

8.04    Discharge Under a Cramdown PLAN. This PLAN may also be confirmed without

the consenting vote of an impaired class so long as it does not discriminate unfairly and is fair

30

and equitable pursuant to 11 U.S.C. §1191(b).  Confirmation of a Cramdown PLAN does not discharge any debt provided for in this PLAN until the COURT grants a Discharge upon completion of all payments under the PLAN.

8.05    No Admission or Waiver.  Neither the filing of this PLAN, nor any statement or provision contained in this PLAN, nor any action by any party with respect to this PLAN shall be construed as an admission against interest or waiver of any rights except as stated in the PLAN as finally confirmed.  If the PLAN is not confirmed, neither the PLAN or any statement or provision contained herein may be used or relied upon in any suit, action, controversy, or other proceeding.

8.06    Modification of PLAN.  The DEBTOR may propose amendments or modifications of the PLAN at any time prior to confirmation as provided in the CODE and RULES.  After confirmation the REORGANIZED DEBTOR may with approval of the COURT, and so long as it does not materially or adversely affect the interest of holders of ALLOWED CLAIMS or INTEREST who have not agreed thereto, remedy any defect or omission or reconcile any inconsistencies in the PLAN, or in the CONFIRMATION ORDER, in such manner as may be necessary to carry out the purposes and intent of the PLAN.  This provision does not limit the ability to modify the PLAN under Section 1193 of the CODE and the RULES.

8.07    Post-Petition Agreements Unaffected by PLAN.  Except as otherwise expressly provided herein, nothing contained in the PLAN shall alter, amend, or supersede any agreements or contracts entered into by the DEBTOR after the PETITION DATE that are otherwise valid, effective and enforceable against the DEBTOR as of the EFFECTIVE DATE.  The REORGANIZED DEBTOR shall be deemed to be substituted for the DEBTOR in such contract

31

or agreement, as applicable, and the REORGANIZED DEBTOR shall have all right, title and

interest of the DEBTOR under such contract or agreement as if the REORGANIZED DEBTOR

had been the original contracting parties thereunder.

## ARTICLE IX

## RETENTION OF JURISDICTION

9.01    Retention of Jurisdiction.  After confirmation of the PLAN, the COURT shall

retain jurisdiction:

a)    For the purposes set forth in Sections 1127(b) and 1193 of the CODE.

b)    To determine the allowance of disallowance of CLAIMS as provided in

the PLAN.

c)    To fix allowances of compensation and ADMINISTRATIVE EXPENSES

as provided in the PLAN.

d)    To determine any adversary proceeding or motion pending prior to the

entry of the CONFIRMATION ORDER or filed thereafter to interpret provisions of the PLAN or

order appropriate relief in the event of violation of the provisions of § 1141 or § 525 of the

CODE.

e)    As set forth in ARTICLE VII above.

f)    Over other matters which may be set forth in the CONFIRMATION

ORDER.

9.02    Final Decree.  On or before one year from the EFFECTIVE DATE the

REORGANIZED DEBTOR shall file a motion for final decree and order closing case in

accordance with Local Rule 3022-1.

32

Ivester's Tree & Lawn, LLC.
Bankruptcy No. 25-21998

9.03  <u>Reopening Case</u>. After entry of final decree and order closing the case, the case

may be reopened as provided in the CODE and to grant the relief provided for in Article VII.

## ARTICLE X

## MISCELLANEOUS

10.01  <u>REORGANIZED DEBTOR as Disbursing Agent Under Consensual PLAN</u>. If the

PLAN is confirmed as a Consensual PLAN, the services of the Trustee will be terminated upon

substantial consummation of the PLAN and the REORGANIZED DEBTOR will serve as the

disbursing agent during the PLAN.

10.02  <u>TRUSTEE as Disbursing Agent Under Cramdown PLAN</u>. If the PLAN is

confirmed as a Cramdown PLAN as described in Section 8.04 herein, the TRUSTEE will serve

as the disbursing agent during the PLAN. If the TRUSTEE acts as the disbursing agent, the

TRUSTEE will be compensated at his regular and customary rate, plus applicable postage, for

services rendered in acting as the disbursing agent upon COURT approval.

10.03  <u>Notices</u>. All notices required or permitted to be made under the PLAN shall be

mailed by first class United States mail, postage prepaid or sent by facsimile or email as follows:

a)     To the REORGANIZED DEBTOR. Ivester's Tree & Lawn, LLC. ATTN:

Christopher Ivester, HC 65 Box 215, Duchesne, UT 84021. (Email: chris@ivestertree.com), and

Andres Diaz or Timothy J. Larsen at DIAZ & LARSEN, 757 East South Temple, Suite 201, Salt

Lake City, UT 84102 Fax: (801) 359-6803 (Email: adiaz@expresslaw.com).

b)     To the holder of an ALLOWED CLAIM or INTEREST. At the address set

forth in the matrix filed in this case or such other address as the Claimant shall have listed on a

CLAIM or upon a notice of change of address served on REORGANIZED DEBTOR and its

33

Ivester's Tree & Lawn, LLC.
Bankruptcy No. 25-21998

attorneys or to the facsimile number or e-mail address of the Claimant.

10.04 <u>Payments</u>.    All payments required to be made on account of ALLOWED ADMINISTRATIVE EXPENSES and ALLOWED CLAIMS under the PLAN shall be mailed by first class United States mail, postage prepaid, to the street address or post office box of the Claimant as described in Paragraph 10.01.

10.05 <u>Change of Address</u>.  Any person entitled to notice or payment under the PLAN may change the address to which notice, or payment is sent by filing a notice of change of address with the COURT and serving copies thereof on parties in interest at their addresses as they appear on the matrix filed herein.

10.06 <u>Reports</u>.  The REORGANIZED DEBTOR shall file such reports as may be required by the CODE and RULES after the EFFECTIVE DATE.

10.07 <u>Request for Confirmation</u>.   The DEBTOR hereby requests confirmation of this PLAN.

DATED this 14th day of July 2025

DIAZ & LARSEN                                      IVESTER'S TREE & LAWN, LLC

By <u>/s/ Andres Diaz</u>                              By: <u>/s/ Christopher Ivester</u>
Attorneys for Ivester's Tree & Lawn, LLC      Its: Manager

34

**IVESTER'S TREE & LAWN, LLC**
**CHAPTER 7 - LIQUIDATION ANALYSIS**
**CHAPTER 11 CASE # 25-21998**
**EXHIBIT 1**

| ASSET | LIQUIDATION VALUE | LIENHOLDER | LIEN AMOUNT | NET |
|---|---|---|---|---|
| **Schedule A -- Real Property:** | | | | |
| NONE | $        - | | | $        - |
| | | | | |
| **Schedule B -- Personal Property:** | | | | |
| Bank Accounts (as of June 2025) | $    39,161.18 | Zions Bank (Right of Setoff) | $    6,137.25 | $    33,023.93 |
| Inventory (as of June 2025) | $    20,000.00 | | $        - | $    20,000.00 |
| 1989 Kenworth Tractor Truck (as of June 2025) | $    18,500.00 | | $        - | $    18,500.00 |
| Office Furniture, Fixtures and Equipment (as of Petition Date) | $     1,000.00 | | $        - | $     1,000.00 |
| Machinery, Equipment and Vehicles (as of Petition Date) | $   784,446.13 | Various Creditors in Classes 1-17 and 19 | $  784,446.13 | $        - |
| Total Assets: | $   863,107.31 | | | $    72,523.93 |
| | | | | |
| **CHAPTER 7 ADMINISTRATIVE CLAIMS:** | | | | |
| | | | | |
| **Professionals:** | | | | |
| Trustee Compensation | $    10,481.00 | | | |
| Attorney for Trustee Fees/Costs | $     5,000.00 | | | |
| Accountants for Trustee | $     5,000.00 | | | |
| Auctioneer/Realtor | $     3,950.00 | | | |
| Total: | $    24,431.00 | | | |
| | | | | |
| **CHAPTER 11 ADMINISTRATIVE CLAIMS:** | | | | |
| | | | | |
| **Professionals:** | | | | |
| Attorney Fees/Costs (Estimated) | $    75,000.00 | | | |
| Subchapter V Trustee Fees (Estimated) | $     5,000.00 | | | |
| Total: | $    80,000.00 | | | |
| | | | | |
| Total Chapter 7 & 11 Administrative Claims: | $   104,431.00 | | | $   104,431.00 |
| | | | | |
| **Total Available for Creditors with Unsecured Claims:** | | | POC | |
| **Priority:** | | | | |
| Utah State Tax Commission (Priority) | $     2,479.88 * | | 1 | |
| IRS (Priority) | $    38,902.77 * | | 22 | |
| Total: | $    41,382.65 | | | $    41,382.65 |
| | | | | |
| **Nonpriority:** | | | POC | |
| **Class 21:** | | | | |
| Blue Ridge (Unsecured Deficiency) | $    95,432.80 | Class 1 | 3 | |
| Marlin Leasing/PEAC (Unsecured Deficiency) | $    35,252.13 | Class 2 | 4 | |
| Financial Pacific Leasing/Umqoua (Second Claim-Unsecured Deficiency) | $     2,013.91 | Class 5 | 7 | |
| U.S. Bank (Unsecured Deficiency) | $    98,195.02 | Class 6 | 8 | |
| Kubota (Unsecured Deficiency) | $    16,483.13 | Class 7 | 10 | |
| Kubota (Second Claim-Unsecured Deficiency) | $    49,268.76 | Class 8 | 11 | |
| Financial Pacific Leasing/Allegiant (Third Claim-Unsecured Deficiency) | $    15,255.90 | Class 9 | 12 | |
| Amur (Unsecured Deficiency) | $    59,057.60 | Class 11 | 14 | |
| First Citizen's Bank (First Claim-Unsecured Deficiency) | $    45,565.77 | Class 13 | 16 | |
| First Citizen's Bank (Second Claim-Unsecured Deficiency) | $    10,924.00 | Class 14 | 17 | |
| First Citizen's Bank/Ritchie Bros.(Third Claim-Unsecured Deficiency) | $    53,018.99 | Class 15 | 18 | |
| AP Equipment Financing (Unsecured Deficiency) | $    73,209.27 | Class 16 | 23,24 and 25 | |
| Allegiant (First Claim-Unsecured Deficiency) | $    20,000.00 | Class 17 | No Claim Filed | |
| Allegiant (Second Claim-Unsecured Deficiency) | $    22,500.00 | Class 19 | No Claim Filed | |
| Carquest Auto Parts | $     3,214.26 | | No Claim Filed | |
| Comenity | $    15,000.00 | | No Claim Filed | |
| First Citizen's Bank | $     3,728.35 | | 19 | |
| MACU | $    14,944.73 | | 20 | |
| Progressive Insurance | $     4,207.28 | | No Claim Filed | |
| Rhinehart Oil | $    35,151.46 | | No Claim Filed | |
| Uline | $     2,738.35 | | 2 | |
| Zions Bank | $     6,784.04 | | 9 | |
| Utah State Tax Commission | $     2,160.78 * | | 1 | |
| IRS | $    24,879.86 * | | 22 | |
| | | | | |
| Totals | $   708,986.39 | | | $   (73,289.72) |
| | | | | |
| DIVIDEND | -10% | | | |

*This Claim is disputed but is treated as allowed for purposes of the Liquidation Analysis.

**IVESTER'S TREE & LAWN**
**ACTUAL AND PROJECTED CASH FLOW 2025-2030**
**CHAPTER 11 BANKRUPTCY CASE No. 25-21998**
**EXHIBIT 2**

| | 4/11/2025 4/30/2025 Actual | Month 5/31/2025 Actual | Month 6/30/2025 Actual | Month 7/31/2025 Actual | Month 8/31/2025 Actual | Month 9/30/2025 Forecast | Month 10/31/2025 Forecast | Month 11/30/2025 Forecast | Month 12/31/2025 Forecast | Forecast Year Ended Dec 31, 2026 | Forecast Year Ended Dec 31, 2027 | Forecast Year Ended Dec 31, 2028 | Forecast Year Ended Dec 31, 2029 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Beginning of Month** | 6,234.61 | 19,678.62 | 13,047.96 | 39,161.18 | 12,045.41 | 25,262.01 | 32,172.01 | 27,172.01 | 14,172.01 | 4,172.01 | 24,172.01 | 39,172.01 | 49,172.01 |
| **INCOME & RECEIPTS** | | | | | | | | | | | | | |
| MONTHLY INCOME | 56,370.28 | 67,226.92 | 87,260.00 | 56,744.35 | 57,171.75 | 55,000.00 | 60,000.00 | 65,000.00 | 55,000.00 | 700,000.00 | 705,000.00 | 710,000.00 | 715,000.00 |
| OTHER INCOME | | | | | | | | | | | | | |
| TOTAL RECEIPTS | 56,370.28 | 67,226.92 | 87,260.00 | 56,744.35 | 57,171.75 | 55,000.00 | 60,000.00 | 65,000.00 | 55,000.00 | 700,000.00 | 705,000.00 | 710,000.00 | 715,000.00 |
| **EXPENSES & DISBURSEMENTS** | | | | | | | | | | | | | |
| TOTAL EXPENSES | 42,926.27 | 73,857.58 | 61,146.78 | 83,860.12 | 43,955.15 | 40,000.00 | 50,000.00 | 63,000.00 | 50,000.00 | 480,000.00 | 490,000.00 | 500,000.00 | 510,000.00 |
| TOTAL DISBURSEMENTS TO SECURED AND PRIORITY CREDITORS | | | | | | 8,090.00 | 15,000.00 | 15,000.00 | 15,000.00 | 180,000.00 | 180,000.00 | 180,000.00 | 180,000.00 |
| **NET CASH FLOW** | 13,444.01 | -6,630.66 | 26,113.22 | -27,115.77 | 13,216.60 | 6,910.00 | -5,000.00 | -13,000.00 | -10,000.00 | 40,000.00 | 35,000.00 | 30,000.00 | 25,000.00 |
| TOTAL DISBURSEMENTS TO UNSECURED CREDITORS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 |
| **Cash End of Month and Funds Available to Pay Admin Claims** | 19,678.62 | 13,047.96 | 39,161.18 | 12,045.41 | 25,262.01 | 32,172.01 | 27,172.01 | 14,172.01 | 4,172.01 | 24,172.01 | 39,172.01 | 49,172.01 | 54,172.01 |